# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

Case No.: SACV 16-01159-CJC(MRWx)

MARICELA REYES, individually and on behalf of all others similarly situated,

Plaintiff,

v.

CAREHOUSE HEALTHCARE CENTER, LLC, SOUTHWEST PAYROLL SERVICES, LLC, and DOES 1 through 20, inclusive,

Defendants.

**ORDER DENYING MOTION TO REMAND**

## I. INTRODUCTION & BACKGROUND

On December 16, 2013, Plaintiff Maricela Reyes filed a single-plaintiff employment action in Orange County Superior Court against Defendants Carehouse

Healthcare Center, LLC, Southwest Payroll Services, LLC, and Does 1 through 20, inclusive, for (1) race discrimination in violation of California Government Code § 12940(a); (2) age discrimination in violation of California Government Code § 12940(a); (3) retaliation in violation of California Government Code § 12940(h); (4) wrongful termination in violation of public policy, California Labor Code §§ 98.6, 232.5; (5) unpaid wages in violation of California Labor Code §§ 1194, 1194.2; (6) failure to pay overtime compensation in violation of California Labor Code § 510; (7) failure to provide meal periods in violation of California Labor Code §§ 226.7, 512; (8) failure to permit rest breaks in violation of California Labor Code § 226.7; (9) failure to provide accurate wage statements in violation of California Labor Code §§ 226, 1174; (10) failure to pay all wages due upon separation of employment in violation of California Labor Code §§ 201, 202, 203; and (11) unfair business practices in violation of California's Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200 *et seq.* (Dkt. 1-1.) On December 23, 2013, Plaintiff filed a First Amended Complaint adding a claim for failure to prevent discrimination or retaliation in violation of California Government Code § 12940(k). (Dkt. 1-2 [First Amended Complaint, hereinafter "FAC"].)

More than two years later, Plaintiff filed a Second Amended Complaint on March 17, 2016, transforming the sixth through twelfth claims from the FAC (unpaid wages, failure to pay overtime compensation, failure to provide meal periods, failure to permit rest breaks, failure to provide accurate wage statements, failure to pay all wages due upon separation of employment, and unfair business practices) into class claims. (Dkt. 1-3 [Second Amended Complaint, hereinafter "SAC"].) She identified the class as all hourly-paid, non-exempt employees who had worked for Defendants since December 13, 2009. (*Id.* ¶ 31.) Defendant Southwest removed the action to this Court on June 22, 2016. (Dkt. 1.)

Almost one year after removal, on June 12, 2017, Plaintiff filed a motion to remand this action to state court for failure to meet the amount in controversy required for federal jurisdiction under the Class Action Fairness Act ("CAFA"). (Dkt. 35 [Motion, hereinafter "Mot."].) For the following reasons, the motion is DENIED.[1]

## II. LEGAL STANDARD

CAFA provides original federal jurisdiction over class actions in which the amount in controversy exceeds $5 million, there is minimal diversity between the parties, and the number of proposed class members is at least 100. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B). "Congress designed the terms of CAFA specifically to permit a defendant to remove certain class or mass actions into federal court. . . [and] intended CAFA to be interpreted expansively." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). "[N]o antiremoval presumption attends cases invoking CAFA" because CAFA was enacted to facilitate federal courts' adjudication of certain class actions. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 550 (2014).

Under CAFA, a defendant removing a case must file a notice of removal containing a "short and plain statement of the grounds for removal." *Id.* at 553. Additionally, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" unless the defendant's assertion is contested by the plaintiff. *Id.* at 554. Where the defendant's asserted amount in controversy is contested, "[e]vidence establishing the amount is required." *Id.* "In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for July 10, 2017, at 1:30 p.m. is hereby vacated and off calendar.

satisfied." *Id.* at 550. Ultimately, the defendant bears the burden of proving that the amount in controversy is met. *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 978 (9th Cir. 2013). However, this "burden is not daunting, as courts recognize that under this standard a removing defendant is *not* obligated to research, state, and prove the plaintiff's claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204–05 (E.D. Cal. 2008) (internal quotation marks omitted).

## III. DISCUSSION

### A. Timeliness

As an initial matter, Defendants incorrectly argue that Plaintiff's motion is untimely. (*See* Dkt. 37 [Opposition, hereinafter "Opp."] at 4–7.) Defendants believe that Plaintiff's motion is subject to the thirty-day time limit required by 28 U.S.C. § 1447(c), which requires that "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction . . . be made within 30 days after the filing of the notice of removal." Defendants contend that Plaintiff's motion is a "belated attack on the sufficiency of [their] pleading, i.e. the sufficiency of its allegations of the amount in controversy contained in its removal petition," which is "best characterized as an alleged 'defect' in removal procedure," and "[a]t worst, it is a procedural attack outside the scope of § 1447(c), and thus subject to a 'reasonable' time limitation." (Opp. at 4–5.) Not so. Plaintiff's motion is entirely premised on Defendants' purported failure to satisfy the amount in controversy. (*See generally* Mot.) "The amount in controversy requirement is a substantive requirement for subject matter jurisdiction based on CAFA." *Avila v. Con-Way Freight, Inc.*, No. SACV1101949CJCRNBX, 2012 WL 12887771, at *1 (C.D. Cal. May 18, 2012), *aff'd*, 588 F. App'x 560 (9th Cir. 2014).

//

Defendants believe that because their notice of removal contained a plausible statement giving rise to CAFA jurisdiction, subject matter jurisdiction unquestionably attaches. (*See id.* at 5 (citing *Dart Cherokee*, 135 S. Ct. at 553).) However, the portion of *Dart Cherokee* that Defendants rely on explains that the "defendant's amount-in-controversy allegation should be accepted *when not contested by the plaintiff* or questioned by the court." *Dart Cherokee*, 135 S. Ct. at 553 (emphasis added). Here, Plaintiff has clearly questioned Defendants' amount in controversy allegation. Although the Court appreciates Defendants' frustration that Plaintiff waited almost one full year before filing the motion, the motion is nevertheless timely as it questions the Court's subject matter jurisdiction, which may be challenged at any time. 28 U.S.C. § 1447.

### B. Amount in Controversy

In the notice of removal, Defendants offered calculations for Plaintiff's claims for unpaid meal and rest period premiums, unpaid overtime compensation, waiting time penalties, and attorneys' fees in order to reach the jurisdictional threshold. (Dkt. 1 at 8–14.) Plaintiff contends that Defendants have not met their burden of establishing the amount in controversy under CAFA because their calculations are based on "unreasonable assumptions" about her claims.[2] (Mot. at 3.)

According to the SAC, Defendants "engaged in a systematic pattern of wage and hour violations." (SAC ¶ 14.) Regarding the unpaid meal and rest period claims,[3] the SAC alleges that Defendants "required Plaintiff and class members to work for more than five and/or ten hours per day without providing timely, uninterrupted thirty-minute meal

---

[2] Plaintiff does not dispute that the other two CAFA requirements concerning minimal diversity and proposed class size have been met. (*See generally* Mot.)

[3] California law provides that if an employer fails to provide an employee a meal or rest period as required, the employee may recover one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided. Cal. Labor Code § 226.7.

periods." (*Id.* ¶ 91.) It further alleges that "Plaintiff and class members routinely worked shifts in excess of eight hours per day during her employment with Defendants, but was [sic] not permitted to take rest breaks." (*Id.* ¶ 95.) To calculate the amount in controversy for these meal and rest period claims, Defendants assigned a violation rate of one meal break violation and one rest break violation per week per class member. (Dkt. 1 at 9.) Defendants cite numerous CAFA cases within the Ninth Circuit in support of this assumption. (*Id.* (citing *Campbell v. Vitran Exp., Inc.*, 471 Fed. App'x 646, 648–9 (9th Cir. 2012) (finding an assumption that "each claimant missed at least one rest break and one meal break per week" was adequately supported by the complaint's allegations of regular, consistent, and routine violations and the deposition testimony of the class representatives); *Byrd v. Masonite Corp.*, No. EDCV 16-35 JGB (KKX), 2016 WL 2593912, at *5 (C.D. Cal. May 5, 2016) (Allegations of employment violations "at all material times" and as the result of a "uniform policy/practice" supported the "assumption that each class member missed one meal period and one rest period per week"); *Garza v. Brinderson Constructors, Inc.*, 178 F. Supp. 3d 906, 912 (N.D. Cal. 2016) ("In this case, plaintiff does not allege that class members were 'never' permitted breaks, but plaintiff does allege that he 'regularly' missed meal breaks and that defendants maintained a 'policy or practice' of both meal and rest break violations. Brinderson's assumption of one violation per week is reasonable based on the allegations of the SAC.") (internal citations omitted); *Arreola v. Finish Line*, No. 14-CV-03339-LHK, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) (finding that pleading "regular or consistent" practice supports assumption that every class member "experienced at least one violation once per week"); and *Jasso v. Money Mart Express*, 2012 WL 699465, *4–6 (N.D. Cal. 2012) ("Given the allegations of a "uniform policy and scheme" and that the violations took place "at all material times," one violation per week on each claimed basis is a sensible reading of the alleged amount in controversy, as pleaded by Plaintiff.")).) Defendants offer the declaration of Christina Young, the Senior Director of Business Applications for Genesis Curative Services LLC, which provides contracted

payroll services to Defendant Southwest, who attests that the putative class members worked a total of 43,829 workweeks during the relevant four-year statutory period at an average hourly rate of pay of $21.27. (Dkt. 6 [Declaration of Christina Young, hereinafter "Young Decl."] ¶¶ 5–6.) Accordingly, Defendants calculated the total amount of missed meal/rest break premiums as $1,864,485.66 (43,829 workweeks x $21.27 x 2 missed meal/rest break premiums = $1,864,485.66). (Dkt. 1 at 10.)

As to the unpaid overtime compensation claim, the SAC alleges that Defendants engaged in a "regular practice of willfully, unfairly and unlawfully" depriving Plaintiff and class members of premium overtime compensation. (SAC ¶ 87; *see also id.* ¶¶ 85–88.) Specifically, Plaintiff and the class allegedly had to (a) "clock out at the end of [their] scheduled shift, even though [they] worked well past [their] scheduled shift and ending times" and (b) "clock out for meal periods when [they were] actually working through [their] meal periods." (*Id.* ¶¶ 15–16.) Again, Defendants estimated one violation per workweek per class member. (Dkt. 1 at 11 (relying on *Campbell, Inc.*, 471 Fed. App'x at 647–49 (9th Cir. 2012); *Ray v. Wells Fargo Bank, N.A.*, 2011 WL 1790123, *6–7 (C.D. Cal. May 9, 2011) (The defendant's estimates based on one hour of unpaid overtime per class member were conservative and reasonable given allegation of consistent failure to pay overtime); *Stevenson v. Dollar Tree Stores, Inc.*, 2011 WL 4928753, *4 (E.D. Cal. 2011) (Where it was plaintiff's standard practice not to pay "requisite compensation for all hours worked," without more specific allegations to narrow the potential scope of damages, the complaint was not susceptible to precise calculations and defendant's assumptions were thus reasonable); *Quintana v. Claire's Stores, Inc.*, 2013 WL 1736671, *6 (N.D. Cal. 2013) ("According to Defendants' declarant, store managers and assistant store managers are 'regularly scheduled to work eight (8) hour days' and that assistant store managers are 'regularly scheduled to work at least 30 hours per week.' Given Plaintiffs' allegations that Defendants systematically failed to pay overtime, this evidence persuades the court that Defendants reasonably

estimated that every class member failed to receive an hour of overtime every pay period."); *Jimenez v. Allstate Ins. Co.*, 2011 WL 65764, *3 (C.D. Cal. 2011) (Based on this allegation of "consistent" overtime work, the defendant reasonably "estimated one hour of unpaid overtime compensation per week for each putative class member.").) Based on the same average hourly pay rate of $21.27, Defendants calculated the average overtime rate for the putative class members as $31.91 per hour (*i.e.*, $21.27 x 1.5 times the regular hourly rate). (*Id.*) Assuming one hour of unpaid overtime wages for each putative class member for each workweek during the four-year statutory period, the total amount of unpaid overtime wages would amount to $1,398,583.39 (*i.e.*, 43,829 workweeks x $31.91 per hour x 1 overtime eligible hour per week = $1,398,583.39). (*Id.* at 11–12.)

Regarding the waiting time penalty claims,[4] the SAC alleges that "Defendants willfully, unfairly, fraudulently, or unlawfully failed to pay Plaintiff and certain class members compensation owed upon separation of employment." (SAC ¶ 107.) The notice of removal explains that "[v]iewing Plaintiff's SAC as a whole, Plaintiff undoubtedly alleges that each putative class member was underpaid by Defendant in some way during the applicable period." (Dkt. 1 at 12 (citing SAC ¶¶ 15(a)–(c) ("Defendants have increased their profits by violating state wage and hour laws by, among other things: (a) failing to pay all wages; (b) failing to pay overtime; (c) failing to provide meal periods or compensation in lieu thereof; (c) [sic] failing to authorize or permit rest breaks or provide compensation in lieu thereof . . . .")).) 348 putative class members were terminated from their employment with Defendant from December 16, 2010, to the date of removal. (Young Decl. ¶ 7.) Consequently, Defendants calculate the

---

[4] California law provides that "[i]f an employer willfully fails to pay . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Cal. Lab. Code § 203.

total amount of potential waiting time penalties as $1,776,470.40 (*i.e.*, $21.27 per hour x 8 hours x 30 days x 348 former employees = $1,776,470.40).

Finally, for Plaintiff's desired attorneys' fees, Defendants maintain that 25% of recovery is a reasonable amount of fees in a class action such as this one. (Dkt. 1 at 13 (citing *Hanlon v. Center for Auto Safety*, 150 F.3d 1011, 1029 (9th Cir. 1998); *In re Activision Securities Litigation*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989); *Giannini v. Northwestern Mut. Life Ins. Co.*, 2012 WL 1535196, at *4 (N.D. Cal. 2012); *Jasso*, 2012 WL 699465, at *6–7).) Defendants contend that Plaintiff is not entitled to attorneys' fees for her meal and rest break or her waiting time claims, so 25% of her unpaid overtime claims would total $349,645.85 (*i.e.*, 25% of $1,398,583.39 unpaid overtime wage liability). (Dkt. 1 at 14.)

Based on these calculations, Defendants assert the total amount in controversy is at least $5,389,185.30. (*Id.*) Plaintiff counters that Defendants assume "every single class member suffered a violation under each claim during every single week of their employment." (Mot. at 3.) Plaintiff relies primarily on *Ibarra* for the proposition that "a 'pattern and practice' of doing something does not necessarily mean always doing something." (*Id.* (quoting *Ibarra*, 775 F.3d at 1198–99).) Plaintiff argues that the SAC does not allege that her complained-of violations were regular and consistent or that Defendants *never* provided meal and rest periods. (*Id.* at 5.)

These challenges are unconvincing. As an initial matter, Defendants did not assume that a violation occurred on *each and every* shift, as was the case in *Ibarra*, 775 F.3d at 1199, but employed more reasonable estimates of one violation per week per employee for the meal and rest break and overtime claims. Additionally, Plaintiff concedes that the SAC does not specify the frequency of the violations or the number of class members affected. (*Id.* at 6, 8, 10.) Rather, the SAC alleges that Defendants' wage

-9-

and hour violations were "*systematic*," (SAC ¶ 14 (emphasis added)), the overtime violations were "*regular*," (*id.* ¶ 87 (emphasis added)), and that the class members "*routinely* worked shifts in excess of eight hours per day" but were not permitted to take breaks, (*id.* ¶ 95 (emphasis added)). These allegations go beyond mere claims of a "pattern and practice" that led to "multiple" violations as was alleged in *Ibarra*. *See Salcido v. Evolution Fresh, Inc.*, No. 214CV09223SVWPLA, 2016 WL 79381, at *5 (C.D. Cal. Jan. 6, 2016) ("Unlike the 'parttern [sic] and practice' that lead to 'multiple' violations in *Ibarra*, Salcido alleges a 'uniform policy and systematic scheme.'"). Thus, "it is not unreasonable to assume that the company applied the allegedly unlawful policies to all putative class members," especially since there are no fact-specific allegations precluding such an assumption. *Id.* at *4–5. Plaintiff tries to distinguish cases like *Salcido* because her SAC does not use the term "uniform policy," (Dkt. 38 ["Reply"] at 4), but there is no such magic words requirement—rather, the language of the SAC as a whole supports Defendants' assumptions.

Furthermore, unlike in *Ibarra*, Defendants have presented evidence that their calculations were conservative. In her discovery responses, Plaintiff stated that she was "not properly paid for all hours worked *every day* that she worked for Defendant." (Dkt. 37-1 [Declaration of Graham Hoerauf, hereinafter "Hoerauf Decl."] Ex. B at Interrogatory No. 16 (emphasis added).) At her deposition, Plaintiff also estimated that Defendants did not allow her to take rest breaks three or four days per week and did not provide her with meal breaks six days per week. (Hoerauf Decl. Ex. A at 168:13–18, 169:11–14.) Defendants' estimates are lower than the rates Plaintiff herself previously suggested and are reasonably calculated. *See Korn*, 536 F. Supp. 2d at 1204–05 (the defendant is not obligated to "research, state, and prove the plaintiff's claims for damages"). Plaintiff argues that these responses were only solicited with regard to her own employment record, which spanned from 2006 until 2012, while the class period begins in 2009 and extends until removal in 2016. (Reply at 6.) However, Plaintiff

alleges that her claims are typical of the class, (SAC ¶ 36(b)), and the SAC does not support her belated contention that "the latter part of her employment contains far fewer violations and is more representative of the class period," (Reply at 6).

The only limiting language in the SAC is Plaintiff's allegation that "certain" class members suffered waiting time violations. (SAC ¶¶ 106–07.) But as Defendants point out, the term "certain" is meant to distinguish former and current employees, since only former employees would be entitled to the waiting time claims. (Opp. at 20.) And Defendants' own calculations for the waiting time penalty claims were properly limited to former employees, not all class members.

Plaintiff also offers her own calculations to challenge that of Defendants. Plaintiff argues that her rest break claims are based on Defendants' policy that only allows two fifteen-minute breaks for work periods greater than six hours in duration, so Defendants' estimates should only have included shifts over ten hours, when employees would be entitled to a third rest period. (Mot. at 6.) In support, she cites a motion for leave to file the SAC that was filed in state court wherein she made this argument. (*Id.*; *see* Dkt. 35-2.) Plaintiff's counsel apparently reviewed Plaintiff's time punches for the 658 shifts she worked and calculated the violation rate to be .26 per workweek based on the number of shifts over 10 hours, resulting in a total amount in controversy of $242,383.14 for the rest break claims. (Mot. at 7; Dkt. 35-1 [Declaration of Jessica Campbell, hereinafter "Campbell Decl."] ¶ 7.) Plaintiff argues that her overtime claim, in turn, is based on Defendants' policy of automatically deducting thirty minutes from the total hours worked by an employee for meals, again citing on the motion for leave to file the SAC in state court. (Mot. at 9.) Plaintiff's counsel calculated her violation rate "by applying an automatic deduction rate of 20% (derived from the calculation . . . using Plaintiff's time records), which resulted in 0.5 hours of unpaid overtime per workweek," and applied that rate from the last six months of her employment through the date of removal to arrive at a

total of $699,291.70 amount in controversy for the overtime claim. (Dkt. 35-1 ¶ 8; Mot. at 9–10.) With regard to waiting time penalties, Plaintiff does not provide her own calculation, but simply argues that Defendants' calculations for this cause of action are unreasonable and therefore should not be considered at all. (Mot. at 10.) However, even adopting Defendants' calculations for waiting time penalties, Plaintiff claims the total amount in controversy is only $3,825,210.99. (*Id.* at 11 ($1,174,625.97 for meal and rest break claims, $699,291.70 for overtime claims, $1,776,470.40 for waiting time penalties, and $174,822.92 (25% of the aggregate of these amounts) for attorneys' fees).)

Plaintiff's calculations are unavailing for two reasons. First, they conflict with Plaintiff's own discovery responses and deposition testimony. Second, they are based on contentions made in a motion filed in state court that are much more specific than the allegations in the SAC. (*See, e.g.*, SAC ¶ 91 ("Defendants required Plaintiff and class members to work for more than *five and/or ten* hours per day without providing timely, uninterrupted thirty-minute meal periods") (emphasis added); *id.* ¶ 95 ("Plaintiff and class members routinely worked shifts in excess of *eight* hours per day during her employment with Defendants, but was [sic] not permitted to take rest breaks) (emphasis added); *see generally* SAC (containing no allegations of automatic deductions).) Plaintiff cannot rely on a motion filed in state court to narrow the scope of the SAC. *Ray*, 2011 WL 1790123, at *5 ("[T]he amount in controversy is determined at the time of removal and is to be decided based on the allegations in the operative pleading.").

Finally, Plaintiff argues that Defendants' notice of removal employs a class period from December 16, 2009, to present, which contradicts their argument in their previously-filed motion to dismiss before this Court that Plaintiff's class claims do not relate back to the date of the filing of her original complaint. (Mot. at 12 (referencing Dkt. 26).) Plaintiff contends that Defendants' calculations should begin on March 17, 2013, which Defendants previously argued was as far back as Plaintiff's claims could

reach, meaning that the class period and class size would "presumably" be cut in half,[5] so the amount in controversy would be $2,694,592.66. (*Id.* at 12–13.) Plaintiff is incorrect. Defendants' calculations are from their notice of removal, which was filed far earlier than their motion to dismiss. (Dkt. 1.) In the notice of removal, Defendants assumed that the relevant time period began in December 2009 based on *Plaintiff's* allegations, since the appropriate inquiry is the amount that Plaintiff put in controversy in the operative complaint at the time of removal. That Defendants believed some of Plaintiff's later-added class allegations should not relate back does not prevent Defendants from relying on Plaintiff's allegations to support their amount in controversy calculations, particularly since the Court has declined to rule on Defendants' relation-back argument for the time being. (*See* Dkt. 30.)

In sum, Defendants' calculations are reasonable based on the evidence available and the allegations of the SAC, so Defendants have demonstrated that the amount in controversy is met by a preponderance of the evidence.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand is DENIED.

DATED: July 5, 2017

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE

---

[5] Plaintiff offers no evidence or argument supporting her assumption that the class would be half the size it is now if Defendants ultimately prevail regarding their relation-back argument.

-13-